KENNEFICK-HAMMOND COMPANY, Respondent, v. NORWICH UNION FIRE INSURANCE SOCIETY, Appellant.

**St. Louis Court of Appeals, April 26, 1904.**

1. **INSURANCE: Explosives.** The keeping of explosives in the building in which goods covered by a policy of insurance were stored, contrary to usage, to a city ordinance and to the terms of the policy, rendered the policy null and void.

2. ———: ———: **Representations.** Although such explosives did not contribute to the loss which ensued, the keeping of such explosives materially increased the risk and forfeited the policy, notwithstanding the provisions of section 7973, Revised Statutes 1899, providing that conditions in policies of insurance shall be construed as mere representations.

3. ———: ———: **"Premises Insured."** Although the building in which the goods insured were kept was not insured, a provision of the policy forbidding the keeping of explosives in or adjacent to the building in which the goods were stored caused the policy to be forfeited by the keeping of such explosives in the building.

4. **APPELLATE PRACTICE: Demurrer to Evidence.** Where a defendant at the close of the evidence offers a demurrer to the evidence as a whole and saves his exceptions to the ruling of the court, the appellate court is required to review all the evidence heard on the trial and determine for itself whether or not there was substantial evidence to support the verdict.

Appeal from Lawrence Circuit Court.— *Hon. H. C. Pepper*, Judge.

REVERSED.

BLAND, P. J.—The facts as developed at the trial are correctly set out in appellant's statement as follows:

"On June 2, 1903, appellant issued to respondents its policy of insurance for one thousand dollars, cover-

ing the property described in said policy as follows:
'$1,000 on their stock of supplies consisting of hay,
grain and feed, scrapers, wagons, plows and other tools
and supplies kept in their warehouse; all while contain-
ed in the one and one-half story brick building with
composition roof situate on lots No. 14 and 15, block No.
3, street Nos. 143-145 West Olive street, Aurora,
Missouri.'"

The respondents were railroad contractors engaged
in grading a railroad some miles from Aurora. They
used dynamite in blasting rock encountered in their
work. They kept a powder magazine about a mile and
a half or two miles from the city of Aurora, where they
usually kept their powder and dynamite. They did
not ordinarily keep powder or dynamite in the building
described in the policy, but the building was used to
store grain, hay, plows, scrapers, and such articles while
not in use, and occasionally men, in respondents' em-
ploy, were permitted to sleep in the warehouse. The
building was close to the center of the city of Aurora.
Under the city ordinances no one was allowed to keep
within the city fire limits of the city, or within one block
of the public square or any schoolhouse or church, a
greater quantity of blasting powder than twenty-five
pounds, or a greater quantity of nitro-glycerine (dyna-
mite) than one pound. The building described in the
policy was within the fire limits, and one block from the
bank of Aurora, and one block from the Frisco depot.

One Woodfill was appellant's agent at Aurora, and
countersigned the policy. At the time the policy was
issued no powder or explosives of any kind were stored
or kept in the building, and up to that time, and until
the time hereinafter mentioned, nothing of the kind had
been kept or stored in said building. On the contrary,
respondents had kept their explosives, except such as
were in use along the line of work, in a powder magazine
constructed and located for that express purpose. All

merchants doing business in Aurora, who handled powder, also had powder magazines located out of the city, and it was not usual or customary for merchants in Aurora to keep or allow about their business houses in the city any explosives except in small quantities. When the policy was applied for and issued, no request was made for permission to store or keep explosives in the building, and, as before stated, no explosives were there at that time or at any time prior thereto.

On September 19, 1903, a fire occurred which destroyed the building and a portion of its contents. About a week before the fire occurred Woodfill went away from Aurora and did not return until after the fire. Up to the time he left nothing had been said to him about placing or storing dynamite or other explosives in the building, and up to the time Woodfill went away, no such articles had been kept or placed in the building. On Tuesday or Wednesday before the fire, which occurred on Saturday, the respondents stored in the building described in the policy about two tons of dynamite, 12,500 exploders and 1,500 caps. These explosives had been in the car on the railroad track about four days before they were put in the warehouse. Respondents were compelled (presumably by the railroad company) to take the stuff out of the cars; and put the same in the warehouse, because respondents could not get teams to haul it to their magazines and because their magazines were full.

All the explosives above mentioned were in the building at the time of the fire. The appellant had no notice of such fact, nor did its agent, because he went away from the city before the dynamite was in the building and did not return until after the fire.

When the fire occurred, it does not appear that any one representing respondents was about the premises. When the alarm was given the fire department went to the scene and began trying to extinguish the fire. It soon became noised around that there was powder in the

building. Whereupon the populace, usually attendant upon fires, withdrew to a safer place, and the firemen began to explore for exploders, etc., and finally located the dynamite in a room which was so located that they had to chop with their axes their way to the powder, and through the heroism of the firemen who risked their lives in the work, the dynamite and other explosives were removed in time to save an explosion, which would probably have resulted in loss of life as well as great damage to property in the city.

The policy contains the following provisions: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void — if the hazard be increased by any means within the control or knowledge of the insured;—or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above-described premises—gunpowder exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine, or other explosives."

If the appellant had known that the dynamite and other explosives were put, kept or allowed in the building it would have cancelled the policy as quickly as possible.

At the close of all the evidence the defendants moved the court to instruct the jury that the plaintiffs could not recover. The court refused to give this instruction and gave instructions so declaring the law to the jury that it was so enabled to, and did, bring in a verdict for the plaintiffs for the full amount of the policy. A motion for a new trial proving of no avail, defendant appealed.

1. That the storage of powder and other explosives mentioned in answer and the evidence was a violation of the terms of the policy, does not admit of a doubt. The agent of appellant, who signed and delivered the policy to the plaintiffs, tried very hard to swear that he knew

powder was kept in the building when he issued the policy but, when he was pinned down to what he actually knew, it was shown that he had no such knowledge, and the evidence shows that it was not usual to keep powder in the building described in the policy of insurance. Because the fire did not originate from the explosives temporarily stored in the building, it is contended by respondents that they did not contribute to the loss and for this reason the policy is protected by section 7973, R. S. 1899, which provides — in substance —that no condition in any policy of insurance shall be taken or construed as other than a mere representation, unless it is material to the risk insured against.

The construction the respondent would have us put upon this section is that, no condition of a policy of insurance shall be construed as other than a mere representation unless it is contributed to the loss. Such construction would be a perversion of both the language and meaning of the statute.

In Dolan v. Ins. Co., 88 Mo. App. l. c. 672, Judge ELLISON, of the Kansas City Court of Appeals, in respect to this section said: "This statute does not avoid all warranties, but only such as are not material to the risk. All matters warranted which are material to the risk are left just as they were before the statute." And cited in support of this construction, the construction of simular statutes in March v. Ins. Co., 186 Pa. St. 629, and Brown v. Ins. Co., 172 Mass. 498.

The construction contended for by the plaintiffs would deny to fire insurance companies the right to limit the risk against which they would issue policies of insurance. That the storage of the explosives in the building by plaintiffs increased the risk and was a clear violation of the express provisions of the contract of insurance, admits of no doubt. By this act the policy was forfeited and the plaintiffs should have been nonsuited, unless there was a waiver of the forfeiture.

There is nothing in the evidence tending to show any fact or circumstance by which a waiver can be inferred. No agent or officer of the company knew or had been informed of the storage of the explosives until after the fire.

Plaintiffs refer to Greenleaf v. Ins. Co., 37 Mo. 25, and Obermeyer v. Ins. Co., 43 Mo. 572, as holding that defendant should be held liable on the policy, notwithstanding the violation of the contract by them. These cases, in effect, decide that where a fire or marine policy contains a provision for forfeiture on the doing of a particular act by the insured and the insured violates the provisions by doing the act, but the company for any reason fails to take advantage of the forfeiture by cancelling the policy, and the thing done that effected the forfeiture ceased to exist or have any effect or influence on the risk insured against, and afterwards there is a loss during the life of the policy, the company cannot invoke the deed and past forfeiture as a defense. The policy, in such circumstances, is inoperative only while the increased risk is in existence and when it terminates the liability of the company will commence. [Schmidt v. Ins. Co., 41 Ill. 295.] The increased risk in this case continued down to the fire and the policy for this reason was inoperative when the fire occurred.

2. Plaintiffs refer to a very nice point made and sustained by the Supreme Court of South Carolina in the case of Leggett v. Ins. Co., 10 Rich. Law. 202. The policy provided that the keeping of gunpowder for sale, or in storage, upon or in the premises insured, should render the policy void. The insurance was upon a stock of goods and merchandise contained in applicant's store, a part of which consisted of gunpowder. But it contended and held that the word "premises" referred to buildings insured and as there were no buildings insured, the gunpowder was not kept upon the premises insured within the meaning of the stipulation. The

Leggett case is distinguishable from the one in hand. In the South Carolina policy the clause reads as follows: "The keeping of gunpowder for sale, or in storage, upon or in the premises insured," etc. The goods insured in the case in hand, were insured while located and contained in a one and one-half story brick building, with composition roof situated on lots 14 and 15, block 15, street No. 143-145 West Olive street, Aurora, Missouri. That part of the prohibitive clause under review reads as follows: "If illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein: or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above premises benzine, benzole, dynamite, ether, fireworks, gasoline, quickfire, gunpowder in exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine or other explosives, phosphorus or petroleum or any of its products of greater inflammability than kerosene oil of the United States standard (which may be used for lights and kept for sale according to law but in quantities not exceeding five barrels provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light): or if a building herein described whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The intent and purpose of this clause is plain. The words "building" and "premises" are used interchangeably. The prohibition goes to the storage, or the keeping of the prohibited articles in the building where the goods insured were located. We are relieved of subtleties and fine distinctions in contracts of insurance under the laws of this State which require them to be construed like any other contract.

3. Plaintiffs further contend that the case was tried upon a theory adopted by the defendant and it is thereby estopped to raise an objection to the action

of the court in overruling its demurrer to the evidence and submitting the issues to the jury. It is a well-settled rule of practice in this State that where parties try a cause upon a certain theory, neither party can have the case considered on another and different theory in the appellate court. [Mirrielees v. Railway, 163 Mo. l. c. 486, 63 S. W. 718, and cases cited.] But where, as was done in this case, the defendant, at the close of all the evidence, offers a demurrer to the evidence as a whole, which the court refused to grant, and he saves his exceptions to the rulings of the court, the appellate court is required to review all the evidence heard on the trial and determine for itself whether or not there is substantial evidence in support of the verdict. [McPherson v. Railway, 97 Mo. 253, 10 S. W. 846; Weber v. Railway, 100 Mo. 194, 12 S. W. 804, 13 S. W. 587; Hilz v. Railway, 101 Mo. 36, 13 S. W. 946; Jennings v. Railway, 112 Mo. 268, 20 S. W. 490; Kerr v. Cusenbary, 60 Mo. App. l. c. 560; Flinn v. Bldg. Assn., 93 Mo. App. 444.]

There is no substantial evidence in the record in support of the verdict; on the contrary, the evidence clearly shows beyond peradventure that the policy was inoperative at the time of the fire and the demurrer to the evidence should have been given.

Judgment reversed. *Reyburn* and *Goode, JJ.,* concur.