THE GERMAN FIRE INSURANCE COMPANY v. THE BOARD
OF COMMISSIONERS OF SHAWNEE COUNTY *et al.*— THE
OAKLAND HOME INSURANCE COMPANY v. SAME.

INSURANCE —*Policy Avoided.* A policy of insurance against fire, con-
taining a condition which forbids the keeping or use of gasoline
upon the insured premises, is avoided by a violation of the condition
by one who occupies the premises with the implied consent of the
assured.

*Error from Shawnee District Court.*

TWO cases were brought by the board of county commis-
sioners of Shawnee county, Kansas, one against the German
Fire Insurance Company, and the other against the Oakland
Home Insurance Company, to recover upon two policies in-
suring a building situate upon the fair ground in Shawnee
county, and known as a "grand stand." It was alleged that
the building was wholly destroyed by fire on September 28,
1888, and that, although proofs of loss had been made, and
all the conditions of the contract had been performed by the
board of county commissioners, the companies had refused to
adjust or pay the loss. A judgment for $1,000 was asked
for in each case. The answers of the insurance companies
are substantially the same, and were, first, a general denial;
second, an averment that the fire occurred through the un-
lawful act of third persons and through the gross negligence
and neglect of the plaintiff; and, third, that the premises
were so occupied as to increase the risk, without the consent
of the insurance companies being indorsed upon the policies,
and that gasoline or some volatile burning fluid was kept
and used, and was permitted by the plaintiff to be kept and
used, on the premises, by reason of which an explosion oc-
curred, which destroyed the property, and that, had the plain-
tiff not permitted gasoline to be used upon the premises, the
loss would not have occurred. The case was submitted to
the court upon an agreed statement of facts, which is as fol-
lows:

"1. The policies of insurance were issued, as alleged by

plaintiffs in their petition, March, 1888, and were in force September 28, 1888, in favor of Shawnee county, Kansas, loss payable to Kansas State Fair Association, as its interests may appear, as lessee; and said policies are hereby made a part of this agreed statement of facts.

"2. The Kansas State Fair Association disclaims any right, title or interest in said policies of insurance, or the building insured thereby.

"3. On September 28, 1888, said building covered by said policies of insurance was totally consumed by fire; loss, $6,000.

"4. The notices of loss and proof of loss were made as alleged in plaintiffs' petitions.

"5. The Kansas State Fair Association held a lease of said fair grounds, including said building, for 20 days each year, as per the terms of their lease hereto attached, marked 'Exhibit A.'

"6. Under the terms of their said lease, the Kansas State Fair Association took possession of the fair grounds on September 10, 1888, and opened their fair September 17, and closed the fair September 22, 1888, and began cleaning up. On 24th September the local members of the Grand Army took possession of the fair grounds with a large force, preparing for the reunion; the officials of the State Fair Association, supposing the Grand Army came by the authority of the board of county commissioners, abandoned the cleaning up, and the Grand Army finished the work, and made general preparations for the reception of their friends, renting booths, tenting grounds, etc., and opened up the Grand Army reunion on Monday, October 1, 1888.

"7. During the time the fair grounds were in the possession of the Kansas State Fair Association, no one was permitted to use gasoline lights or stoves, and whenever found upon the grounds were immediately removed, by force, if necessary.

"8. On and after September 28, 1888, Bradford Miller, H. C. Lindsey and John M. Wilkerson composed the board of county commissioners of Shawnee county; neither the Grand Army of the Republic, nor anyone for them, made application to said board of county commissioners or to any member thereof for authority to use said fair grounds for reunion purposes, and no authority of any kind, tacit or otherwise, was given to said Grand Army, to so occupy said fair grounds by said county commissioners.

"9. Neither the Kansas State Fair Association, nor anyone for them, authorized, either directly or indirectly, said Grand Army of the Republic to occupy said fair grounds, nor did said Grand Army of the Republic, nor anyone for them, ask for or request of said Kansas State Fair Association the right to occupy said fair grounds.

"10. Said fire was caused as follows, to wit: On September 28, 1888, a lunch-counter booth was occupied by a woman having a gasoline stove and gasoline light, under lease from some official of the Grand Army of the Republic, and either by the flaring out of the light, or the explosion of the gasoline stove, the fire which burned the 'grand stand' was started. Neither the board of county commissioners nor the Kansas State Fair Association gave the woman any authority to occupy said booth, nor did anyone of them know of her existence, until after the fire.

"11. Upon the time in question, the G. A. R. reunion had been extensively advertised in the city of Topeka, and in the county of Shawnee, and was a matter of general and common notoriety, and the members of the board of county commissioners and the officers of the fair association knew in advance of the holding, and knew at the time of the holding that it was being held. Thousands of soldiers and citizens of Shawnee were in attendance daily, the G. A. R. being in great favor with the community. No questions were asked as to its rights there, and its local members controlling it, supposing the organization had a right to use the public property belonging to the county, went on and held the reunion for a period lasting several days, during all the time of which gasoline stoves and lamps were used, booths rented, tents pitched, and games, fireworks, parades and festivities indulged in. The G. A. R. has used the same place before for reunions, and they supposed they had a right to, and if they had applied to the board of county commissioners, they would have been willingly granted the use, gratuitously, of the said premises for the purpose of holding said reunion."

Upon the pleadings and the agreed statement of facts, the court found in favor of the plaintiffs and against the companies, and rendered judgment against each in the sum of $1,140. In each case, motions for a new trial were made and overruled, and each company brings the case here alleging error.

*E. F. Ware,* for plaintiffs in error, submitted the following authorities: 116 U. S. 113; 134 id. 110, 115; 51 Am. Rep. 532; 97 Mass. 284; 58 Pa. St. 443; 45 N. W. Rep. 1047; 49 id. 253; 13 Am. Rep. 582.

*R. B. Welch, D. R. Hile,* and *Henry Keeler,* for defendants in error:

1. The term "premises," as used in the policies, does not mean the state fair grounds, but means the building — the grand stand, as described in the policies. See *Insurance Co. v. Insurance Co.,* 40 Wis. 446; *Sporry v. Insurance Co.,* 22 Fed. Rep. 516; *Insurance Co. v. Exposition Society,* 11 Atl. Rep. 572; *La Force v. Insurance Co.,* 43 Mo. 518.

2. The allegation in the answer of the insurance companies, that the loss was caused through the gross negligence and neglect of the plaintiff, need not be considered seriously, because this would be no defense if proved. *Phenix Ins. Co. v. Sullivan,* 39 Kas. 449. See, also, *Commercial Ins. Co. v. Robinson,* 64 Ill. 265; *Insurance Co. v. Simmons,* 30 Pa. St. 229; May, Ins. (3d ed.), § 241.

Prohibitions of hazardous business and the use of hazardous articles do not apply to an occasional or accidental use. See 1 Am. Rep. 45; 9 Hun, 415; 3 N. Y. 122–126; 31 Md. 219; 30 Pa. St. 299; 51 Cal. 101.

In any case the assured undertakes only that he himself will not do the act, and that he will use due care and reasonable diligence to prevent it. See *Insurance Co. v. McDowell,* 50 Ill. 121; *Daniels v. Insurance Co.,* 12 Cush. 426.

3. The allegation that the fire was caused by the unlawful acts of third persons is not proved. "Unlawful act," as here used, means a criminal act. The agreed facts show that the fire was caused by an accident. There is nothing unlawful, *per se,* in the use of a gasoline stove.

Applying the principle of interpretation of such restriction clauses already alluded to, and the clause would refer only to the criminal acts of third persons, acting under the advice or sanction of the assured. "An answer is insufficient to sustain

a defense on a clause in a policy that it shall be void 'if the risk be increased by any means,' unless it sets out that there was such an increased risk by act of the assured." *Tischeler v. Insurance Co.*, 66 Cal. 178. See, also, *State Ins. Co. v. Taylor*, 24 Pac. Rep. 333; *Waggonoch v. Westchester Ins. Co.*, 34 Ill. App. 629; *Rife v. Insurance Co.*, 115 Pa. St. 530.

4. The law is, that a use of prohibited articles, to avoid the policies under conditions such as are in this case, must be a use by the insured or a use by some person occupying the premises by authority of the insured. Furthermore, the law is, that use of prohibited articles elsewhere than upon the premises covered by the policy will not avoid the contract. See *Dobson v. Sotheby*, 1 Moody & M. 90; *Shaw v. Roberts*, 9 Ad. & E. 75; *Gates v. Madison*, 5 N. Y. 469; *Insurance Co. v. Simmons*, 30 Pa. St. 299.

The opinion of the court was delivered by

JOHNSTON, J.: Each policy contained a condition provided that the insured should not keep or use gasoline upon the premises, and that a violation of the condition would avoid the policy. The facts agreed upon clearly show that the fire which destroyed the property was occasioned by the use of gasoline, and it fairly appears that the gasoline which caused the fire was kept and used upon the premises. The statement respecting it is not as explicit as it might have been, but we think that the fair import is, that the lunch counter was a part of the premises. The burning of the grand stand was the subject of controversy and about which the parties were stipulating, and the manifest meaning of their agreement is, that the fire which burned the grand stand was communicated directly from the gasoline used upon the premises. It is true that the gasoline was not kept and used by the assured, nor by any express authority granted by them, and they, therefore, insist that they should not be held responsible for the use of the forbidden article. Although it is agreed that the board of county commissioners gave no authority for the use of the premises by the Grand Army of the Republic,

it is agreed that the fact that the reunion was to be held upon the premises was a matter of general and common knowledge. It had been extensively advertised, and the board of county commissioners knew in advance that it would be held upon the fair grounds. It was held there for a period of several days, and gasoline stoves and lamps were used without hindrance or restriction. The board of county commissioners not only knew that the reunion was to be held upon the fair grounds, as other reunions had been held before, but they would have willingly granted the use of the premises for that purpose, if application had been made. Under such circumstances, the members of the Grand Army of the Republic cannot be regarded as strangers or trespassers, nor can the assured escape responsibility for the use of the prohibited articles. The company stipulated in each case that it would not assume the risk of the use of a very dangerous and combustible material. The violation of these conditions by anyone who occupied the premises, with the implied consent of the assured, is equivalent to a violation by the assured themselves. Under the facts, it must be held that the Grand Army of the Republic occupied and held control of the grounds with at least the implied assent of the board of county commissioners, and when they intrusted the occupation and control of the premises to another the latter became their representative, for whom they must answer as for themselves. (*Insurance Co. v. Gunther*, 116 U. S. 113; *Gunther v. Insurance Co.*, 134 id. 110; *Kelly v. Insurance Co.* 97 Mass. 284; *Diehl v. Insurance Co.*, 58 Pa. St. 443; *Insurance Co. v. Simmons*, 30 id. 299.) The condition in the policy that gasoline should not be used on the premises is plain and unambiguous, and the defendants in error expressly agreed that a violation of this condition should operate as a forfeiture of all insurance under the policy. It was a reasonable condition, and they cannot reasonably complain of the enforcement of a forfeiture.

The judgment in each case will be reversed, and the causes remanded, with the direction that judgment shall be entered in each case in favor of the insurance company.

All the Justices concurring.