PACKARD MANUFACTURING COMPANY, a Corporation, v. INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, a Corporation, Appellant. —No. 39608.—203 S. W. (2d) 415.

Court en Banc, June 10, 1947.

Rehearing Denied, July 14, 1947.

688

*Franklin E. Reagan* for appellant; *Adolph K. Schwartz* and *Sievers & Reagan* of counsel.

*N. Murry Edwards* and *James A. Waechter* for respondent.

BOHLING, C.—The Packard Manufacturing Company, a corporation, instituted this action against the Indiana Lumbermens Mutual Insurance Company, a corporation, to recover $40,500.62 (also interest, penalties, and attorney fees) under three insurance policies issued in April, June, and October of 1943, "on machinery, including blow pipe system complete, and on stock while contained in ▇ buildings" occupied by the insured in St. Louis, Missouri, and protecting against loss and damage thereto by fire for one year. The jury found for the insurer. Insured's motion for new trial was sustained. Insurer appealed and now contends that insured had no submissible case because gasoline had been and was upon the premises before and at the time of the fire and caused the policies to stand suspended at the time of the loss. Each policy contained the following provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if . . .; or if the hazard be increased by any means within the control or knowledge of the insured; . . . . or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, greek fire, gunpowder exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine or other explosives . . ."

There is no dispute about 11 gallons of gasoline in two 5-gallon and one 1-gallon containers being in the building for five or six weeks before the fire and remaining there until after the fire.

Insured was organized as a corporation in April, 1943. Frank Cammarata was president, Walter Gummersheimer was vice-president, and Paul J. Schneider was secretary and treasurer of the corporation. Messrs. Cammarata and Schneider each contributed $6,000 of the original $12,000 capital. Due to World War II, steel was not available for certain civilian purposes in 1943 and insured engaged in the business of manufacturing wooden baby carriages, nursery and high chairs, play pens and like articles. Sometime in late 1943 or early 1944 steel was released from its war-time restrictions and was again available for the manufacture of baby carriages. The fire occurred on the night of March 3, 1944, the report coming in about 10:20 P. M.

It was under control after about four hours. Several flare-ups or explosions occurred in the building during the fire. Broken and unbroken 5-gallon glass bottles, 18 in all, and the remains of some slow burning fuse were found in the building after the fire. The corks had been removed and gasoline was in the unbroken bottles, some being on their side with the gasoline emptied even with the neck of the bottle. Insured's truck was found burned in the building on the morning after the fire, with the remnants of one of the broken bottles underneath the truck at its left rear. The 11 gallons of gasoline first mentioned had been in the building for some time at the entrance to the wash rooms and was there after the fire. Insured's witness Schneider, the secretary and treasurer of insured, testified that he had hoarded this gasoline from before rationing; that he put it in his car and "rode it around with me for about a month"; that he thought it was dangerous; that a filling station man told him gasoline that old would not be of any use in cold weather because the condensation of water would get to the carburetor, freeze and block the gas line; that about five weeks before the fire he was at the Company's building and told the porter to take the gasoline out of his car; that he did not tell the porter where to put it and had not seen it since.

█ Insurance policies, like other contracts, receive reasonable interpretations. The ultimate aim is to ascertain the object and intent of the parties. An often quoted statement is: "Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties: they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made." Prange v. International L. Ins. Co., 329 Mo. 651, 661, 46 S. W. 2d 523, 526, 80 A. L. R. 950, 957, citing cases. And: "Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but insofar as open to different constructions, that most favorable to the insured must be adopted. [Citing authority.] However, as said in 14 R. C. L., Sec. 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.'" █ Wendorff v. Missouri State L. Ins. Co., 318 Mo. 363, 370, 1 S. W. 2d 99, 101[4, 7], 57 A. L. R. 615, 619. See also Broadway Laundry Co. v. New York L. Ins. Co., 351 Mo. 278, 286, 172 S. W. 2d 851, 853[2]; State ex rel. v. Shain, 350 Mo. 422, 427, 166 S. W. 2d 484, 487; State ex rel. v. Shain, 344 Mo. 623, 127 S. W. 2d 675; and cases infra generally.

█ A leading case on the issue in Missouri is Kenefick and Hammond v. Norwich Union F. Ins. Soc., 205 Mo. 294, 103 S. W. 957, sustaining 119 Mo. App. 308, 80 S. W. 694, and holding a fire insurance policy on supplies, equipment, tools et cetera in a warehouse stood sus-

pended and inoperative under a provision that the policy should be void "if . . . there be kept, used or allowed on the above-described premises . . . gunpowder . . . nitroglycerine, or other explosives" where a large quantity of dynamite was in the building when the fire started. The insured were railroad contractors, used dynamite in blasting and maintained a powder magazine outside the corporate boundaries to keep their powder and dynamite. A shipment of dynamite was received. Insured's magazines were full and teams were not available to haul the shipment to the magazines. The railroad insisted the shipment be moved from the cars and insured placed two tons of dynamite, 12,500 exploders and 1,500 caps in the warehouse. Three or four days thereafter the fire occurred. The firemen moved the dynamite and other explosives from the building in time to save an explosion. Insured contended a recovery was proper because the explosives did not contribute to the loss. This contention was denied, the court reasoning that insured's contention would make all warranties mere representations and would deny fire insurance companies the right to limit the risks they would contract against and pervert the explicit language of the statute (now Sec. 5934, R. S. 1939); whereas matters warranted and material to the risk remain warranties and, so far as material, insurance companies could limit the risks contracted against.

State ex rel. American F. Ins. Co. v. Ellison (Banc), 269 Mo. 410, 190 S. W. 879, involved a provision making an entire policy void "if with the knowledge of the insured foreclosure proceedings be commenced, or notice given of the sale of any property covered by this policy by virtue of any mortgage, or trust deed . . . " (An identical provision is a part of the sentence under consideration in the instant case.) Insured was a manufacturing corporation. The property was subject to two mortgages; a first securing $100,000 in bonds and a second securing $20,000 in notes, original amounts. The note holders acquired the capital stock of the insured and also a large part of the $100,000 in bonds, we understand sufficient for control thereof. Another company took a lease on and, later, an option to purchase insured's plant and went into possession June 1, 1913. The property was then advertised for sale under the second mortgage. The fire occurred June 17, and on June 30 the lessee exercised its option to purchase. The property was purchased at the foreclosure sale about two weeks after the fire by one of the parties interested in the notes, bonds and stock of the insured. The foreclosure was at the request of all interested parties and to "straighten out" the title that it might be conveyed to the holder of the option to purchase freed of any efforts of general creditors to subject it to their judgments, insured being on the verge of bankruptcy. The value of the property was established at $110,000; and the issue was that, since foreclosure could not increase the hazard with a secured indebtedness of $120,000, the

policy provisions should not control. The Kansas City Court of Appeals (187 S. W. 564, 568, 569) considered that the foreclosure proceedings tended to lessen and not to increase the hazard; that there was no substantial violation of the policy to the enlargement of the risk, and held that the insurer could not successfully interpose the policy provisions. On certiorari, court en Banc, Faris, J., writing and citing numerous cases, refused to add to the policy provision the clause that the foreclosure proceedings had to increase the risk; reasoning that it was the court's duty "merely to say what that clause means; not to write ▇ into it terms or conditions which it does not contain"; that, absent fraud or mistake, courts were legally powerless to relieve parties from their contractual obligations; and that: "If parties will make such contracts they have no right to expect courts to disregard the law in construing them." The record of the Court of Appeals was quashed. See, on remand, 196 Mo. App. 241, 194 S. W. 722. The issue with respect to an increase in the hazard by the prohibited act being necessary to void the policy was squarely up and ruled in the negative. In the circumstances, the foreclosure proceeding, lessening the hazard, was not a contributing factor to the fire.

Henderson v. Massachusetts Bonding & Inv. Co., 337 Mo. 1, 84 S. W. 2d 922, cited by insured, held a prohibited warranty against "explosives" did not prohibit the keeping of "fireworks" for sale where insurer's policy-writing agent had been informed insured sold fireworks for the July Fourth season because such differences exist between "explosives" and "fireworks" that to have avoided liability "fireworks" should have been specifically named in the prohibited articles warranty. The concluding paragraph of the Henderson opinion clearly implies that had "fireworks" been specifically named in the prohibited articles warranty, as "gasoline" is specifically named in the instant warranty, the loss would not have been protected. We mention other authorities in the margin.*

▇ Insured's argument that liability exists because insured did not have knowledge or control of the 11 gallons of gasoline owned by

---

*4 Couch, Cyc. of Insurance Law, Secs. 966, 966b, Gasoline, 966c; 4 Joyce, Insurance, 2d Ed., Secs. 2198-2200, 2202(f); 5 Appleman, Insurance (1941), Secs. 2961, 2967-2970; Richards, Law of Insurance, 4th Ed., Sec. 255; 29 Am. Jur. p. 546, Secs. 701-711; 45 C. J. S. p. 308, Sec. 558; 26 C. J. p. 218, Secs. 266-277; Annotation, L. R. A. 1917C, 278; Annotation, 3 British R. C. 7; Gunther v. Liverpool & London Globe Ins. Co., 134 U. S. 110, 10 S. Ct. 448, 33 L. Ed. 857; Penman v. St. Paul F. & M. Ins. Co., 216 U. S. 311, 30 S. Ct. 315, 54 L. Ed. 491, affirming 151 Fed. 961; Bastian v. British Am. Assur. Co., 143 Cal. 287, 77 Pac. 63, 66 L. R. A. 255; Morgan v. Germania Fire Ins. Co., 104 Kan. 383, 179 Pac. 330; German Fire Ins. Co. v. Commissioners of Shawnee County, 54 Kan. 732, 39 Pac. 697, 45 Am. St. Rep. 306; Ertischek v. N. H. Fire Ins. Co., 179 App. Div. 827, 167 N. Y. S. 58, affirmed in 228 N. Y. 541, 126 N. E. 906; Miller v. American Eagle F. Ins. Co., 253 N. Y. 64, 170 N. E. 495; Heron v. Phoenix Mut. F, Ins. Co., 180 Pa. 257, 36 Atl. 740, 36 L. R. A. 517, 57 Am. St. Rep. 638.

Mr. Schneider is without merit. Aside from the facts that Mr. Schneider ordered the removal of the gasoline from his automobile at the factory and that the plant superintendent knew the gasoline was stored in the building for several weeks prior to the fire (established by insured's witnesses), a warrantor's knowledge of and control over matters unconditionally "warranted" in an insurance policy is immaterial. This is inherent in the meaning of the term. Knowledge of or control over a risk not within a contract cannot be material. Risks which the insurer explicitly refuses to assume remain, as prior to the contract, unprotected by it. We think insured recognizes this as some authorities cited involved the "increase of hazard warranty." Mr. Justice Brandeis in St. Paul F. & M. Ins. Co. v. Bachmann, 285 U. S. 112, 116, 52 S. Ct. 270, 76 L. Ed. 648, a case wherein the original prohibited articles warranty had been modified by a rider to authorize the keeping of a prohibited article for a specified purpose or "purposes not more hazardous" (making the "more hazardous" feature a jury issue), makes clear that the "Prohibited Articles Warranty" and the "Increase of Hazard Warranty" "are distinct. The latter is not violated unless there is increase of hazard within the knowledge and control of the insured. The former may be violated if a tenant keeps the prohibited article on the premises, even if this was done without the knowledge and control of the insured." Liverpool & London Ins. Co. v. Gunther, 116 U. S. 113, 128, 129, 6 S. Ct. 306, 313, 29 L. Ed. 575, 580 (on second appeal, 134 U. S. 110, 10 S. Ct. 448, 33 L. Ed. 857), in holding insured's knowledge of the breach immaterial, quoted ▆▆ and applied Mead v. Northwestern Ins. Co., 7 N. Y. (3 Seld.) 530, 533: "'. . . The question whether a warranty has been broken can never depend upon the knowledge or ignorance or intent of the party making it, touching the acts or the fact constituting the breach.'" Miller v. American Eagle F. Ins. Co., 253 N. Y. 64, 67, 170 N. E. 495, states: "To hold the company to liability in this case because the gasoline was kept by a tenant and not by the landlord, or was kept without his knowledge, would be to rewrite the policy and make a new contract for the parties." Quoted and applied in Albertson v. Caroline Farmers F. Ins. Co., 257 App. Div. 578, 14 N. Y. S. 2d 27, 29, where an employee breached a prohibited articles warranty without the consent or knowledge of the insured. To like effect Leonard v. Northwestern Nat. Ins. Co., 290 Fed. 318, 320[1]; Merrill v. Westchester F. Ins. Co., 75 Fed. 2d 764, citing cases from several jurisdictions.

Insured's cases are distinguishable. Schaffer v. Hampton Farmers' Mut. Ins. Co., 183 Minn. 101, 235 N. W. 618, 619[2], and Royal Exch. Assur. of London v. Thrower, 246 Fed. 768, 770[4], explicitly recognize the distinction between the increased hazard warranty and the prohibited articles warranty, but the facts were within the increased hazard warranty and, consequently, conditioned upon the knowledge

and control of the insured. Security Ins. Co. of N. H. v. Dazey (C. C. A., 7th Cir.), 78 Fed. 2d 537, was concerned with the bringing of the prohibited article into the building for the purpose of destroying the property and antagonistic to the insured's interests. Some language there used may ignore the effect of a "warranty"; which has been considered in Missouri (Mers v. Franklin Ins. Co. (1878), 68 Mo. 127, 131) as elsewhere to be a part of the contract that "must be exactly and literally fulfilled," and permits of no inquiry "into the materiality or immateriality of the fact warranted." For instance, Pacific Mut. L. Ins. Co. v. Glaser (1912), 245 Mo. 377, 387, 150 S. W. 549, 551, 45 L. R. A. (N. S.) 22, states: "A warranty is a part of the contract and must be strictly true, whether material to the risk or not." And, quoting 3 Cooley's Briefs on Law of Insurance, p. 1954: "'It is, however, well settled that a breach of warranty is fatal to the policy, though the insured had no knowledge of the falsity constituting the breach, and did not intend to deceive the insurer.'" We give no consideration to any gasoline in the eighteen 5-gallon bottles in the building for the evident purpose of burning the property, the factor under discussion in Security Ins. Co. of N. H. v. Dazey, supra.

Prohibited articles warranties are variously worded and the meaning of an insurance policy changes with the language employed. Insured's cases of I. H. Lawrence & Son v. Merchants & Mechanic's Mut. Aid Soc. (Mo. App.), 277 S. W. 588, 589[2], and Smith v. German Ins. Co., 107 Mich. 270, 65 N. W. 236, 239, 240, 30 L. R. A. 368, passed off on the "storing" of gasoline. The policies in the Lawrence & Son case were upon a stock of groceries in a store building. A by-law of the insurer provided: "No gasoline or coal oil shall be stored in any room or warehouse where a fire of any kind is maintained." Small quantities of coal oil for a cook stove and gasoline for lamps stored under a shed in the yard, were brought into the building as occasion therefore arose as an incident to the ordinary and usual conduct of the business. The court held: "It is manifest that the coal oil and gasoline kept in the building temporarily in small quantities for consumption in the coal oil stove and gasoline lamps . . . were not 'stored' in the building within the meaning of the by-law in question." See Weininger v. Metropolitan F. Ins. Co., 359 Ill. 584, 195 N. E. 420, 98 A. L. R. 169, 176, citing a number of cases.

The Smith case involved the destruction of a county courthouse, was by a divided court, three judges joining in the majority opinion, another tendering a strong dissent and the other not sitting. The holding turned on the correctness of an instruction to the effect that insured's defense predicated upon a "storing" (the policy provisions were broader) of gasoline in the courthouse was without foundation. In the repair of the courthouse it was necessary for painters to scrape off the old paint. Gasoline torches were used to facilitate this

work, and for approximately three weeks a 5-gallon can of gasoline was kept in the tower for the convenience of the painters. The fire occurred while the work was in progress. In holding "there was not such a storing of gasoline within the building as to avoid the policy," the court considered "storing" to mean a keeping for safe custody and delivery in the same condition and not a keeping for consumption on the premises. Some authorities state arguendo, the Smith case referring to Dodson v. Sotheby (1827), 1 Moody & M. 90, that "store" refers to a permanent or habitual and not an occasional introduction of the article for a temporary purpose connected with insured's occupation of the premises. The holding in these cases, when analyzed, is that a temporary or occasional use of a prohibited article in small quantities in a reasonable way and necessarily incidental to the insured's occupation does not breach a provision against storing, such use being considered within the intention of the parties at the issuance of the policy unless explicitly prohibited. The instant prohibited articles warranty against keeping is not modified by the words "permanently" or "habitually." The keeping in Kenefick-Hammond Co. v. Norwich Union F. Ins. Co., supra, had been only for 3 or 4 days, had become necessary by reason of an exigency connected with the conduct of insured's business, was temporary and was not intended to be permanent or habitual. The distinction between "store" and "keep" is recognized in Renshaw v. Missouri State Mut. F. & M. Ins. Co., 103 Mo. 595, 605, 15 S. W. 945, 947, 23 Am. St. Rep. 904, in stating the omission of the word "keep" in the phrase evidenced an intention to permit a keeping for sale of hazardous articles "ordinarily kept in such a business" and holding the word "store", used in the policy, did not prohibit a keeping for sale, but a deposit for preservation; that is, a keeping of a continuing nature. Under Mr. Schneider's testimony the instant gasoline was "stored" in the building. The scope of the Smith case is explained in Boyer v. Grand Rapids F. Ins. Co., 124 Mich. 455, 83 N. W. 124, 126, 83 Am. St. Rep. 338, an opinion concurred in by the entire court, including the author of the Smith case, and holding the bringing of a gallon of gasoline upon the premises "not for the purpose of use in a reasonable way for necessary repairs" but for use in a stove in an upstairs room avoided the policy under a provision against gasoline being "kept, used or allowed" on the premises. The court pointed out that in the Smith case ordinary repairs were being made in a reasonable way and that the holding was "upon the theory that it was in the contemplation of the parties that the insured building should be kept in repair, and that what it was reasonably necessary to do to accomplish that purpose would not avoid the policy," although a prohibited article increasing the risk be used, if such use be reasonable and proper in prosecuting the work.

Implicit in the instant prohibited articles warranty is the intent of the parties that an agreement would be entered into and be endorsed on or added to the policy whenever insured desired to keep or use or allow gasoline on the premises and bring the property within the policy while gasoline was on the premises. We understand this was a standard policy provision. It was not an unusual provision. The parties agreed that it should apply notwithstanding a "usage or custom" to the contrary. Even so, the testimony of insured's witnesses, stockholders and officials, was that there was no occasion for having more than a gallon of gasoline on the premises for any purpose connected with insured's business. This was all the evidence on the issue and there is no foundation for maintaining that keeping or storing 11 gallons of gasoline on the premises was within the intention of the parties to the policy. Consequently absent a modification of the original agreement the policy should be construed and applied as originally written. The parties originally expressly conditioned the coverage upon gasoline not being kept, used, or allowed on the premises. This did not prohibit gasoline being on the premises, but, if so, insured assumed the risk in the absence of a modification of the policy. Mr. Schneider's gasoline was in the building. It was there without any intention for its consumption in the usual prosecution of or for any purpose connected with insured's business. It was there without definite limitation as to time. A transient keeping is one which must be brief. The instant keeping had continued for five or six weeks and might have continued throughout the life of the policies. Its presence was not temporary within the meaning of the adjudicated cases. The established keeping was a storing for future use. The breach of the prohibited articles warranty is inescapable under our rulings in Kenefick-Hammond v. Norwich Union F. Ins. Soc., State ex rel. American F. Ins. Co. v. Ellison, and Renshaw v. Missouri State Mut. F. & M. Ins. Co., all supra. It is also inescapable if we give effect to the covenant between the parties that: "This entire policy . . . shall be void . . . if . . . there be kept, used or allowed on the above described premises . . . gasoline . . . " under the more general holdings in cases like Prange v. International L. Ins. Co., Wendorff v. Missouri State L. Ins. Co., supra. Missouri courts have not gone to the length of some courts in construing away the affirmative provisions of contracts. The order granting a new trial should be set aside with direction to reinstate the verdict of the jury and enter judgment thereon. It is so ordered.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court en Banc. *Douglas, Ellison, Hyde* and *Leedy, JJ.,* concur; *Conkling, J.,* concurs in result; *Clark, J.,* and *Tipton, C. J.,* dissent.

■ PER CURIAM:—Respondent's motion for rehearing argues that the words "kept, used or allowed," in the insurance policy herein involved, should be construed to mean kept with knowledge. It then argues that the corporation had no knowledge of the presence of the gasoline because no one knew it was there except the colored porter, who took it out of Schneider's car. However, respondent overlooks the testimony of its own witness, W. E. Koerber, its plant superintendent (who hired its employees, helped to make its inventories, and had the duty to make its plant operate efficiently) that he knew this gasoline had been stored in the plant for several weeks before the fire. He also said that when he saw it there he inquired about it and found out from the porter that it belonged to Schneider.

A corporation can obtain knowledge only through its officers or agents and it is a well established rule of agency that the knowledge of an agent of a corporation with reference to a matter within its scope of his authority and employment and to which his authority or employment extends is imputed to the corporation. [2 Am. Jur. 286, Sec's. 368-370; 13 Am. Jur. 1035, Sec. 1110; 3 C. J. S. 194, Sec. 262; 19 C. J. S. 613, Sec. 1078; Globe Indemnity Co. v. First National Bank (Mo. App.), 133 S. W. (2d) 1066; Schneider v. Schneider, 347 Mo. 102, 146 S. W. (2d) 584; Dace v. John Hancock Mut. Life Ins. Co. (Mo. Sup.), 148 S. W. (2d) 93; Osler v. Joplin Life Ins. Co. (Mo. Sup.), 164 S. W. (2d) 295.] Certainly, the keeping of this gasoline, in the place where it was left, was a matter within the authority of plaintiff's plant superintendent. Therefore, even on respondent's construction of the above quoted words, there is no escape from the fact that it did have sufficient knowledge of this gasoline being kept there and allowed it to remain on the premises.

The motion for rehearing is overruled. All concur.