## SHEFRIN v. HAWKEYE CASUALTY CO.
### No. 5235.

United States District Court
W. D. Missouri, W. D.
Aug. 15, 1949.

David Skeer, Kansas City, Mo. for plaintiff.

Sprinkle & Knowles and Roy F. Carter, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

This is an action on a policy of automobile theft insurance. The plaintiff, as an automobile dealer, on November 4, 1947, purchased a 1947 Buick Super Model 4 Door Sedan at a stipulated cost of $2750. On December 23d following he obtained from the defendant a policy of insurance which, among other contingencies insured against, included one designated as: "D Theft (Broad Form)", and by coverage "W" were inserted the words, "Comprehensive-Loss or Damage to the Automobile, Except by Collision but including * * *, Theft * * * Actual Cash Value." In like manner, under the said contingency entitled "D Theft (Broad Form)", the words "Actual Cash Value" also appeared.

Under the heading "Conditions" it was provided by Condition numbered "14", that "The limit of the company's liability for loss shall not exceed the actual cash value of the automobile * * * at time of loss nor what it would then cost to repair or replace the automobile * • * * with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations." These related to contingencies other than theft.

This was followed by a provision relating to theft: "The company may pay for the loss in money or may * * * replace the automobile * * * as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid * * *."

Admittedly, the automobile was stolen on January 31, 1948, and was not recovered until September 1, 1948. It was driven many thousands of miles while out of the possession of the owner. The evidence was undisputed that it was in bad condition when recovered and that its value did not exceed $1875. The testimony, in like manner, was undisputed, that while the cost of the automobile including accessories amounted to $2762.91, which was $12.91 above the amount stipulated in the policy, yet the actual value at the time of the theft, according to the uncontradicted evidence, varied from $2900 to $3200. The automobile was out of the hands of the owner for almost seven months and was used badly by the thief, or by persons into whose hands the automobile had been placed. While the defendant acknowledges the validity of the insurance, the theft, and damage to the property, yet it invokes that portion of "Conditions" numbered "14" which it interprets as providing that its liability shall not exceed "cost to repair" the automobile with deductions for depreciation.

These several contentions make the legal issue between the parties. Incidentally, the defendant, before recovery of the car, offered to pay sums of money below the actual cost of the car and below the value as proved by the plaintiff at the time the car was stolen. After the automobile was recovered the defendant only agreed to pay for the repairs and fixed the cost of such repairs at $551.34. The plaintiff, in addition to claim for damages, seeks to recover for damages and for vexatious delay and refusal to pay, together with reasonable attorney's fees and, as well, for expenses of a hired car as provided in the policy.

1. An examination of "Conditions" numbered "14" shows that the limit of liability therein named in the first paragraph related to damages by fire and windstorm, "Collision or Upset", "Windstorm, Earthquake, Explosion, Hail or Water," and matters of that kind, in addition to "Theft." The first paragraph of said "Condition" numbered "14" apparently relates only to damages as scheduled above. The second and last paragraph of the "Condition" numbered "14" is applicable to recovered, stolen cars, and provides as follows: "The company * * * *may return any stolen property with payment*

*for any resultant damage thereto at any time before the loss is paid * * *."* (Emphasis mine.)

The only question, therefore, for decision is what the "resultant damage" was to this automobile. It was stolen on January 31, 1948, and not recovered until the 1st day of September, 1948. It was badly used during that period. According to the uncontradicted evidence it was worth at least $2900 when it was stolen and was worth only $1875 when recovered. The damage, therefore, was $1025. This, therefore, should be considered "the resultant damage" to plaintiff's automobile by reason of the theft.

■ The obligation of the company to pay such "resultant damage" was unequivocal and unambiguous. But, even so, the policy must be construed favorably to the policyholder. Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W.2d 415, loc. cit. 416. It has undertaken to escape its obligation by invoking those particular provisions of the policy relating to fire or windstorm, collision or upset, etc. Clearly the plaintiff is entitled to recover $1025. This figure results from a conservative cash value of $2900 at the time the car was stolen and the established cash value by sale after recovery. Plaintiff received $1875 for the car. See Byrd v. Bankers & Shippers Ins. Co., 224 Mo.App. 451, 28 S.W.2d 423; Finn v. Indemnity Co. of America, Mo. App., 297 S.W. 175, loc. cit. 177; Gosnell v. Camden Fire Ins. Ass'n of Camden, N. J. et al., Mo.App., 109 S.W.2d 59, loc. cit. 72.

■ 2. The only other question is whether the plaintiff is entitled to damages for vexatious refusal to pay. As provided by Section 6040, R.S.Mo.1939, Mo.R.S.A., if an insurance company vexatiously refuses to pay a loss, "the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

As indicted, the defendant has disregarded that portion of Condition numbered 14 which obliged it, upon return of an insured stolen automobile to pay "resultant damage thereto." This is a clear and unambiguous provision and should not have been intermingled and confused with other portions of the "Conditions" relating to other matters. Instead of paying the "resultant damage," the defendant has delayed payment by quibbling on matters of repairs. The "resultant damage" to the automobile in question could not have been repaired. The excessive use or damage was beyond any power to repair and was, of course, the "resultant damage" from the theft of the automobile. It would follow that plaintiff is entitled to damages under the statute mentioned not exceeding 10% of the damages, which were $1025; 10% of which is $102.50.

■ The evidence in the case tended to show that a reasonable attorney's fee would be $750. The amount involved would not justify so large a sum; $375 would be a reasonable fee and this amount should be allowed.

■ The plaintiff also sues for the use of other automobiles, pursuant to the provisions of paragraph VII of the "Insuring Agreements." This provides that:

"Loss of Use by Theft-Rental Reimbursement •

"The company following a theft covered under this policy, shall reimburse the named insured for expense not exceeding $5 for any one day nor totaling more than $150 * * *."

The evidence was that the plaintiff paid out much more than this amount, in fact several times the amount. This is not part of the damages, but is reimbursement, and the plaintiff is entitled to $150, the limit fixed by the policy.

■ Plaintiff has also asked for interest at 6% on the $1025 from the date the car was stolen. He would not be entitled to interest from that date, but only for interest from the time proofs were made and the defendant refused or neglected to pay. It appeared from the evidence that the

defendant indicated a disposition to make payment in February, 1948. The exact date was not stated, so that interest should only be computed from the 1st day of March, 1948, on $1025.

Judgment will be entered accordingly.