Jackie E. WILSON and Shelby J. Wilson, Plaintiffs-Appellants,

v.

CONCORDIA FARMERS MUTUAL INSURANCE COMPANY, a Mutual Insurance Company, Defendant-Respondent.

No. 25662.

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Morgan M. Moulder, Camdenton, for plaintiffs-appellants.

W. R. Schelp, Lexington, for defendant-respondent.

## PER CURIAM:

This is an appeal by plaintiffs from an adverse jury verdict and judgment in their action upon a fire insurance policy issued by defendant Concordia Farmers Mutual Insurance Company. Defendant insurer denied liability under a policy provision which suspended the coverage "while the hazard is increased by any means within the control and knowledge of the insured; . . ."

The facts disclose that defendant issued its policy insuring Jackie E. Wilson and Shelby J. Wilson, his wife, against loss by fire to the dwelling and attached house trailer located in Gilliam, Missouri, in the sum of $4,500.00 for a term of one year, beginning April 8, 1969. In July, 1969, Mr. Wilson obtained new employment in Mon-treal, Missouri, and plaintiffs moved their household and personal effects from their residence in Gilliam to their new home in Montreal, Missouri, during July and August, 1969.

On the evening of September 3, 1969, plaintiff Jackie Wilson drove to the property, taking a U-Haul trailer, to pick up all the remaining personal effects. He was accompanied by Harold Boggs, and they met Gerald DeWeese at the house and loaded everything in the trailer, using flashlights, as the electricity, gas, and oil had been turned off. They finished about 10:00 or 10:30 p. m., when DeWeese left in his truck, and plaintiff took Boggs to Slater, Missouri, which was three or four miles from plaintiffs' house and took about ten minutes to drive there. The house was cleaned out pretty well and was closed up and locked when they left.

Jessie Burton, who lived across the street from the Wilson house, testified he was awakened by some noise about 11 o'clock that night and saw Mr. Wilson backing the U-Haul trailer by the side of the house and also saw a pickup truck, which drove away. He was awakened later by a rattling and banging noise, which sounded like loading something on the trailer. After a while he got up and saw that the house was on fire. He told his wife to call the fire department, and he dressed and went to the scene. The sheriff's records show the fire was reported at 11:45 p. m.

Experienced fire investigators inspected the building and trailer shortly after the fire and presented testimony and photographic evidence of five separate and distinct fires in various locations in the premises with no interconnecting burning. In these areas they found containers for turpentine, paint and varnish, charcoal lighter fluid, and the melted remains of glass containers which the investigator testified could not have been caused from normal combustibles but were the result of exposure to intense heat of a flammable liquid such as turpentine for a period of one to

five minutes. The burned areas had a distinctive charred "burn pattern," which results when a flammable liquid is poured on the floor, and photo exhibits showed the charred fire pattern coming from the various containers found in the building and introduced in evidence. The undisputed evidence was that such conditions would increase the hazard and chance of a fire loss and make the property much more susceptible to burning.

## I

■ The first point in plaintiffs' brief is "the verdict is against the greater weight of the credible evidence and is against the law under the evidence." The attempted point raises nothing for review. Almost innumerable appellate decisions have held that a reviewing court, is not authorized to weigh the evidence and that whether a jury's verdict is against the weight of the evidence is a question for the trial court alone. See Curtis v. Curtis, Mo.Sup., 427 S.W.2d 410, Neavill v. Klemp., Mo.Sup., 427 S.W.2d 446; also see 3A Mo. Digest Appeal and Error ■ The question whether there is any substantial evidence, however, is for the appellate court's determination. That question is substantially what is raised by plaintiffs' fourth point, and our review of the evidence will be made in connection with that portion of this opinion.

## II

■ Plaintiffs' second point is that the court erred in overruling Mrs. Wilson's motion to exclude all evidence with reference to the separate conduct of the plaintiff Jackie Wilson on the night of the fire, citing Walker v. Phoenix Ins. Co., 62 Mo. App. 209. The facts are not the same. In Walker the policy insured the husband only, who was the sole party plaintiff and owner of the insured property. The court expressly found there was no evidence that he assented to, connived at or was in privity with his wife in any manner, and held that

her unlawful acts, if any, could not be charged to him. Because of substantial difference in the situation here, the Walker case is not in point.

Here the insured property belonged to both plaintiffs and they were jointly insured under the policy, pursuant to application made by the husband as agent for both. The property involved constituted their joint dwelling in Gilliam until the husband obtained new employment in July, 1969, and then both plaintiffs moved jointly to their new joint house in Montreal, Missouri. The purpose of the events which occurred from July through the night of the fire was to remove said joint possessions from one joint house to the other. After the fire, the husband continued to act for both in signing and filing proof of loss. Under these circumstances, it is fairly inferable that the acts of the husband on the night of the fire was part of a joint enterprise on behalf of both plaintiffs. See Vaughn v. Great American Insurance Co., 390 S.W.2d 622, 1. c. 627.

The issue of whether the increased hazard was within the control or knowledge of both plaintiffs was squarely presented to the jury by Instruction No. 3. The jury's finding pursuant to said submission was supported by substantial evidence and is determinative of the wife's knowledge or control of the extra hazard. The evidence of the husband's actions on the night of the fire was properly admitted as bearing upon said issue. His knowledge and control could be and was attributed by the jury to his wife, who was his joint enterpriser.

In view of the foregoing, it is unnecessary for us to explore the application here of the generally accepted doctrine that in the case of a joint policy covering joint property, not even an innocent co-owner may recover if the other co-owner is guilty of wrongful conduct. Couch on Insurance 2d, Sec. 74:673, Vol. 18, p. 594.

## III

Plaintiffs' third point is that the court below erred in refusing to give withdrawal Instruction No. 8. That point need not be reviewed because plaintiffs have failed to set forth that instruction in the argument portion of their brief, as required by Rule 83.05(a), V.A.M.R. Nevertheless, as a matter of grace, we have considered this assignment and find it without merit.

## IV

Plaintiffs' fourth and final point is that the court below erred in refusing their motion for a directed verdict at the close of all the evidence. In this connection, plaintiffs point out that the defense herein was predicated entirely on the affirmative defense of increased hazard. Plaintiffs proceed to argue that defendant did not submit sufficient evidence to support the submission of that defense. The following analysis of the evidence shows that contention is not well founded.

The evidence describing the nature, description and location of the separate fires, and the turpentine, varnish, charcoal lighter fluid and other containers in various "burn patterns" was not disputed. Plaintiffs' only explanation was that the containers were "normal household articles" which were "stored in the utility closet." In Instruction No. 3, to which plaintiffs made no objection, the court directed the jury to find for the defendant if they found "that the hazard of fire was materially increased . . . by the location of flammable materials and substances on the premises . . . within the control or knowledge of plaintiffs . . . [which] directly caused or contributed to cause the fire insured against."

Under the law the court must accept the written policy as the expression of the agreement made by the parties, and give effect to the intentions of the parties as disclosed by clear and unambiguous language. We cannot rewrite their agreement. Only if the language is ambiguous or open to different constructions, should we engage in construction. Plain and unambiguous language must be given its plain meaning. Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523; Packard Mfg. Co. v. Indiana Lumbermens Mutual Ins. Co., 356 Mo. 687, 203 S.W.2d 415. Here the increased hazard clause is plain, and Instruction No. 3 properly stated the factual issue for the jury thereunder.

In Packard Mfg. Co. v. Indiana Lumbermens Mutual Ins. Co., supra, the facts were somewhat similar to the instant case. After a nighttime fire, broken and unbroken five-gallon glass bottles (some containing gasoline) were found in the building, along with two five-gallon and one one-gallon container of gasoline which were still intact. Plaintiff's secretary testified he had hoarded the gasoline when it was rationed and had the porter take it from his car five weeks before the fire, but he had not seen it since that time. The policy contained a provision that it would be void "if the hazard be increased by any means within the control or knowledge of the insured . . . or if there be kept, used or allowed on the above-described premises: . . . gasoline . . . ." In holding plaintiff could not recover, the court said, l. c. 420:

"The parties originally expressly conditioned the coverage upon gasoline not being kept, used, or allowed on the premises. This did not prohibit gasoline being on the premises, but, if so, insured assumed the risk in the absence of a modification of the policy."

The issue of the increase of hazard was properly submitted to the jury by the court, and we find the evidence fully supports the jury's finding.

We find that the issues were fully presented to the jury, and their verdict is supported by the evidence and the law. The judgment of the trial court is affirmed.