Linda M. and Elmer D. WILCOX,
Respondent,

v.

P.I.E. MUTUAL INSURANCE
CO., Appellant.

No. WD 51680.

Missouri Court of Appeals,
Western District.

June 25, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Steven Wendell White, Independence, for
Respondent.

John C. Cozad, Kansas City, for P.I.E.
Mutual Insurance Company.

Before LOWENSTEIN, P.J., and
HANNA and SPINDEN, JJ.

LOWENSTEIN, Presiding Judge.

This case centers on whether a professional liability insurance policy issued by the appellant, P.I.E. Mutual Insurance Co., to Dr. Robert Masterson, D.O., covers the doctor in a lawsuit for medical negligence filed against him by Linda and Elmer Wilcox, the respondents.  In order to protect himself from personal liability, Dr. Masterson settled with the Wilcoxes and assigned them his rights under his medical malpractice insurance policy with P.I.E.  The Wilcoxes now claim that the act of malpractice, which occurred while Dr. Masterson was working as an emergency room doctor, is covered by P.I.E.'s policy.  P.I.E. claims that the terms of the policy cover Dr. Masterson only as a family physician, not as an emergency room doctor.

The facts underlying the malpractice suit arose on January 13, 1991 when Linda Wilcox was treated by Dr. Masterson in the emergency room of Park Lane Medical Center.  Dr. Masterson diagnosed Wilcox with sinusitis and an anxiety attack and thereafter released her.  At 7:00 p.m. the same day, Wilcox returned to the emergency room and was diagnosed with a heart attack.  Two years later, the Wilcoxes filed suit against Dr. Masterson alleging that he had negligently failed to diagnose a heart attack or an impending heart attack.

The P.I.E. Mutual Insurance Co. had issued to Dr. Masterson a professional liability insurance policy covering the time period in which he treated Mrs. Wilcox.  Dr. Masterson called upon P.I.E. to defend and indemnify him in the suit, but P.I.E. denied coverage, saying the policy did not cover emergency room work by Dr. Masterson. P.I.E. offered Dr. Masterson a defense with a complete reservation of rights, and sug-

gested that Dr. Masterson also hire an attorney to protect his personal interests.

Unknown to P.I.E., Dr. Masterson began to pursue a settlement insulating him from personal liability. On July 11, 1994, Dr. Masterson and the Wilcoxes executed a settlement agreement under which the Wilcoxes accepted $100 to release Dr. Masterson from any exposure. Under the terms of the settlement agreement, Dr. Masterson assigned his rights under his P.I.E. policy to the Wilcoxes.

On July 19, 1994, a hearing was held in the trial court concerning causation and damages. Pursuant to the terms of the settlement agreement, Dr. Masterson confessed negligence and put on no opposing evidence. The trial court entered judgment in favor of the Wilcoxes in the amount of approximately $575,000.

Once the judgment became final, the Wilcoxes garnished P.I.E. and served interrogatories on it asking if P.I.E. owed Dr. Masterson any money. P.I.E. denied owing Dr. Masterson, and the Wilcoxes responded by filing exceptions to the interrogatory answers. P.I.E. denied the exceptions.

A trial on the garnishment exceptions on stipulated uncontroverted facts was held, and on August 15, 1995, the trial court found that the insurance policy unambiguously covered the Wilcoxes' claims, that Dr. Masterson did not breach any provision of the policy, and that the settlement agreement was not the product of fraud or collusion.

P.I.E. appeals the judgment of the trial court in three points. First, P.I.E. argues that the policy unambiguously denies coverage to Dr. Masterson when considered as a whole. The second and third points deal with Dr. Masterson's settlement, which P.I.E. claims was done in violation of the policy and by fraud or collusion.

### POLICY COVERAGE

This court first looks to whether the policy, as a matter of law, provides coverage. A policy must be construed as a whole and it must be given a reasonable interpretation. *Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 356 Mo. 687, 203 S.W.2d 415 (banc 1947).

The trial court found "that the insurance policy including the endorsements attached to and forming a part of the policy is unambiguous and that the Wilcoxes [sic] claims are covered." The trial court based its decision on a "reporting endorsement," effective January 18, 1993, which reads as follows:

In consideration of the premium paid in the amount of $3,557.00, this endorsement is attached and made a part of the policy whose number is shown above.

The policy shall also apply to any alleged injury, arising out of the performance of professional services rendered or which should have been rendered by the individual insured, occurring from 01/01/88 (Retroactive date of "claims made" policy) to 01/01/93 (Expiration date of "claims made" policy) for which no claim was made or no suit brought prior to the effective date of this endorsement. This coverage shall apply only for such period as indicated above and then only to such period(s) of time during which the individual insured was previously covered by THIS PRIMARY "claims made" policy, shall be $1,000,000 per CLAIM and $1,000,000 aggregate for all claims covered by this endorsement. Nothing contained herein shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements, or limitations of this policy other than as above stated.

The trial court's reading of the above endorsement was not only that it allowed Dr. Masterson to report claims arising out of incidents occurring as far back as January 1, 1988, but also that it modified coverage to "any alleged injury" arising out of Dr. Masterson's work as a doctor, regardless of whether Dr. Masterson was working as a family physician or as an emergency room doctor. Where the main policy had previously applied only to family practice and eleven specific dates upon which Dr. Masterson had worked in the emergency room, the trial court found that the endorsement changed the policy to cover any injury Dr. Masterson caused—whether as a family physician or as an emergency room physician.

The trial court noted that emergency room coverage for the date at issue here was not contained in the *original* policy. The trial court bases its finding that Dr. Masterson's emergency room services were covered solely upon the January 18, 1993 endorsement set out above.

When this court looks at the policy as a whole, including the endorsement, it must reach a different result.

First, under the "General Declarations" of the policy, "Item 4. Coverages" plainly reads that the policy covers "Family Practice—No Surgery." This general limitation seems to preclude the trial court's reading that the policy covered "any alleged injury" occurring when Dr. Masterson acted as an emergency room physician or otherwise.

Having established that the policy by itself only covers acts by Dr. Masterson as a family practice physician, the real question is whether the endorsement changed the policy coverage. This court does not believe so. The endorsement, where it reads "The policy shall also apply to any alleged injury ..." plainly applies the *existing policy* as it had always applied—to cover acts by Dr. Masterson only in his capacity as a family physician. The sole effect of the endorsement, unsubtly entitled "Reporting Endorsement", is to allow Dr. Masterson to report lawsuits arising out of acts on dates which would not have been within the reporting period but for the endorsement. On the date Linda Wilcox was treated, Dr. Masterson was *not covered for emergency room work*.

Because this court holds that the P.I.E. policy did *not cover* the action or inaction by Dr. Masterson in the emergency room which injured Linda Wilcox, the other points need not be addressed.

The judgment is hereby reversed and remanded, with directions to the trial court to enter judgment in favor of P.I.E.

All concur.